**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**COMPETITOR LIAISON BUREAU, INC.,**
**NASCAR, INC.,**

        **Plaintiffs,**

**-vs-**                                       **Case No. 6:08-cv-2165-Orl-28GJK**

**CESSNA AIRCRAFT COMPANY,**

        **Defendant.**

_____

# ORDER

This is an insurance subrogation case based on a products liability claim against Defendant Cessna Aircraft Company ("Cessna").[1] It arises from a tragic incident that occurred on July 10, 2007 when a 310R model aircraft ("the Aircraft") manufactured by Cessna, owned by Plaintiff Competitor Liaison Bureau, Inc. ("CLB"), and operated by Plaintiff NASCAR, Inc. ("NASCAR"), sustained an in-flight electrical fire and crashed into a neighborhood in Sanford, Florida causing death, personal injury, and property damage to persons and property on the ground.[2] (Joint Pretrial Statement ("JPS"), Doc. 109, at 1). Plaintiffs settled[3] with those who asserted the underlying wrongful death, personal injury and

---

[1] Plaintiffs also filed alternative contribution and indemnity claims against Cessna.

[2] The two pilots aboard the Aircraft were also tragically killed in the crash. However, the only damages at issue in this case are those incurred by persons and property on the ground–not those aboard the Aircraft.

[3] Plaintiffs held several liability insurance policies issued by United States Aviation Underwriters, Inc., as managers of The United States Aircraft Insurance Group (Compl.,

property damage claims resulting from the accident. (Compl. ¶¶ 11-14; Lexington Compl.¶¶ 11-14; Westchester Compl. ¶¶ 11-14). Plaintiffs now seek to recoup that money from Cessna. Plaintiffs argue that the Aircraft was unreasonably dangerous when it was manufactured because Cessna used PVC-insulated wire in the cockpit of the Aircraft and Cessna knew or should have known that the wire was not flame resistant and would create dangerous quantities of toxic fumes and smoke when ignited. (JPS ¶ 3(a)). Cessna denies that the PCV-insulated wire is defective, but it argues that even if it were, Cessna is entitled to summary judgment based on the statute of repose.[4] As discussed below, Cessna's motion for summary judgment must be granted.

## I. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When faced with a "properly supported motion for summary

---

Doc. 2, ¶ 11), and Intervenor Plaintiffs Lexington Insurance Company ("Lexington") and Westchester Fire Insurance Company ("Westchester"), (Lexington Compl., Doc. 34, ¶ 11; Westchester Compl., Doc. 35, ¶ 11). Although it had not been determined whether Plaintiffs were at fault for the crash, each of the liability insurers chose to settle with the underlying claimants and obtain assignment of their claims against all entities, other than the insureds, who were found to be ultimately responsible for the July 10, 2007 crash. (Compl. ¶¶ 11-14; Lexington Compl.¶¶ 11-14; Westchester Compl. ¶¶ 11-14). For ease of discussion, CLB, NASCAR, and their insurers will be collectively referred to as "Plaintiffs."

[4]This case is now before the Court on Cessna's Motion for Summary Judgment Based on Statute of Repose (Doc. 51), Plaintiffs' response (Doc. 68), and Cessna's reply (Doc. 80); Intervenor Plaintiffs' Joint Motion for Summary Judgment and Response in Opposition to Cessna's Motion for Summary Judgment (Doc. 67); Cessna's response (Doc. 101), and Intervenor Plaintiffs' reply (Doc. 105); and Plaintiffs' Motion for Partial Summary Judgment on Statute of Repose Affirmative Defense (Doc. 79), Cessna's response (Doc. 104), and Plaintiffs' reply (Doc. 106).

judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). However, the failure to respond and create a factual dispute by the nonmoving party "does not automatically authorize the entry of summary judgment for the moving party." Dixie Stevedores, Inc. v. Marinic Maritime, Ltd., 778 F.2d 670, 673 (11th Cir. 1985). "Rule 56 requires the moving party to demonstrate the absence of a genuine issue of fact." Id.

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must be material and genuine. That is, the factual evidence must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## II. Legal Framework

There are two statutes of repose at issue in this case: Florida's statute of repose for products liability claims ("the FSR"), section 95.031(2)(b)-(d), Florida Statutes, and the federal statute of repose contained in the General Aviation Revitalization Act ("GARA"), 49 U.S.C. § 40101, Note. The FSR provides:

> Under no circumstances may a claimant commence an action for products liability, including a wrongful death action or any other claim arising from personal injury or property damage caused by a product, to recover for harm allegedly caused by a product with an expected useful life of 10 years or less, if the harm was caused by exposure to or use of the product more than 12 years after delivery of the product to its first purchaser or lessee who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product.

§ 95.031(2)(b), Fla. Stat. The FSR additionally provides that "[a]ll products . . . are conclusively presumed to have an expected useful life of 10 years or less" except for a few enumerated exceptions. Id. One of the exceptions is for "[a]ircraft used in commercial or contract carrying of passengers or freight." Id. § 95.031(2)(b)(1). For such aircraft, "no action for products liability may be brought more than 20 years after delivery of the product to its first purchaser or lessor who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product." Id. § 95.031(2)(b)(3). The other exception is if "the manufacturer specifically warranted, through express representation or labeling, that [the product has] an expected useful life exceeding 10 years" in which case "the product has an expected useful life commensurate with the time period indicated by the warranty or label." Id. § 95.031(2)(b)(2). Furthermore, the FSR provides that regardless of whether the twenty-year or the twelve-year statute of repose applies, "[t]he [applicable] repose period . . . is tolled for any period during which the manufacturer through its officers, directors, partners, or managing agents had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect." Id. § 95.031(d).

GARA, on the other hand, provides an eighteen-year statute of repose, 49 U.S.C. § 40101, Note § 3, for any "civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft . . . brought against the manufacturer of the aircraft," Id. § 2(a). The GARA statute of repose does not apply "if the person for whose injury or death the claim is being made was not aboard the aircraft at the time of the accident." Id. § 2(b).

### III. Analysis

It is undisputed that the statute of repose began to run on November 22, 1978 when Jackson Development Corporation, which was not engaged in the business of selling or leasing aircraft, purchased the Aircraft. (Jackson Aff., Doc. 53, ¶¶ 6-7). This suit was filed in state court on November 25, 2008–approximately thirty years after the statute of repose began to run. (Notice of Removal, Doc. 1, ¶ 1). Therefore, this action is barred under both the FSR and GARA unless an exception applies. The FSR and GARA, however, contain different exceptions, so the Court must first determine which statute of repose applies and then analyze the exceptions contained within that statute. As discussed below, the FSR is the controlling statute of repose and none of its exceptions apply to this case.

*A. Which Statute Applies?*

GARA expressly preempts "any State law to the extent that such law permits a civil action [for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft] to be brought after the [eighteen-year] limitation period." 49 U.S.C. § 40101, Note § 2(d). Therefore, if Florida's twelve-year statute of repose applies to this matter, it is not preempted by GARA, but if Florida's twenty-year

statute of repose applies, it is preempted by GARA.  See Monroe v. Cessna Aircraft Co., 417 F. Supp. 2d 824, 830 (E.D. Tex. 2006) ("[GARA] preempts state law to the extent that such law allows a claim to be brought against aircraft manufacturers more than eighteen years after the plane is first placed into service."); Victor E. Schwartz & Leah Lorber, The General Aviation Revitalization Act: How Rational Civil Justice Reform Revitalized an Industry, 67 J. Air L. & Com. 1269, 1285-86 (2002) ("[GARA] preempts state law to the extent state law provides for a longer period of repose, but does not displace a state statute of repose that provides for a shorter period."); cf. Pub. Health Trust of Dade Cnty., Fla. v. Lake Aircraft, 992 F.2d 291, 294 (11th Cir. 1993) ("[W]here Congress has with words pre-empted some kinds of state lawmaking, courts are cautious about relying on implied pre-emption theories to limit state authority further.").

The twenty-year repose period only applies to "[a]ircraft used in commercial or contract carrying of passengers or freight."  § 95.031(2)(b)(1), Fla. Stat.  Plaintiffs argue that the Aircraft falls into this category because it was used in furtherance of NASCAR's business, which is a "commercial" enterprise.  However, to accept such a construction would be to take the word "commercial" out of context and rewrite the statute as applying the twenty-year repose period to any aircraft used in commerce, rather than aircraft used in "commercial . . . carrying of passengers or freight."  In the FSR, "commercial" modifies "carrying of passengers or freight" and is juxtaposed to "contract carrying of passengers or freight."  Therefore, it is illustrative to examine the definition of "carrier" and "contract carrier."

"A 'carrier' is an individual or organization (such as . . . an airline) that contracts to transport passengers or goods *for a fee*.  Black's Law Dictionary 242 (9th ed. 2009)

(emphasis added). A "contract carrier" is also termed a "private carrier" and is defined as "[a]ny carrier that is not a common carrier by law." Id. In other words, a contract carrier is one that "is not bound to accept business from the general public" as opposed to a "common carrier" which is a "*commercial* enterprise that holds itself out to the public as offering to transport freight or passengers for a fee. . . [and] is generally required by law to transport freight or passengers . . . without refusal, if the approved fare or charge is paid." Id. (emphasis added); see also Suazo By and Through Suazo v. Del Busto, 587 So. 2d 480, 483 (Fla. 3d DCA 1991) ("[A] common carrier is any *carrier required by law to convey passengers* or freight without refusal if the approved fare or charge is paid *in contrast to a private or contract carrier.*") (emphasis in original) (quotations and citations omitted).

The Federal Aviation Administration's ("FAA") definition of "commercial operator" is also helpful in this instance. It provides that a "commercial operator" is "a person who, *for compensation or hire*, engages in the carriage by aircraft in air commerce of persons or property . . . ." 14 C.F.R. § 1.1 (emphasis added). The FAA regulations further state that in order to determine whether "an operation is for 'compensation or hire,' the test applied is whether the carriage by air is merely incidental to the person's other business or is, in itself, a major enterprise for profit." Id.

NASCAR's use of the Aircraft was clearly incidental to its business–rather than a major enterprise for profit in itself–and NASCAR never utilized the Aircraft to transport any passengers or freight for a fee. Accordingly, NASCAR was not a "carrier" and did not utilize the Aircraft in the "commercial or contract carrying of passengers or freight." As such,

Florida's twelve-year, rather than its twenty-year, statute of repose applies and is not preempted by GARA.

*B. The "Specifically Warranted" Exception*

The FSR provides an exception to the statutory repose period for "[a]ny product . . . which the manufacturer specifically warranted, through express representation or labeling, as having an expected useful life exceeding 10 years." § 95.031(2)(b)(2), Fla. Stat. In such cases, the product "has an expected useful life commensurate with the time period indicated by the warranty or label." Id. Plaintiffs argue that Cessna "specifically warranted" that the Aircraft had an expected useful life of "at least thirty years" through "express representations" contained in Cessna's maintenance manual (Doc. 68-2), and Cessna's Supplemental Inspection Document ("SID," Ex. A to Beth Gamble Aff., Doc. 52) (collectively "maintenance documents"). (Doc. 68 at 14).[5]

In its maintenance documents, Cessna provides that various components of the plane should be inspected "based on total airframe hours/landings or calendar time in service." (SID at 7). For example, it is recommended that the "Cabin Door Retention" be examined "at the first 10,000 flight hours or 20 years" and then that the "inspection is to be repeated every 5,000 flight hours or 10 years." (Doc. 68-2 at 12). In other words, the inspection

---

[5] As a preliminary matter, it is noted that at least part of the maintenance documents were issued in 2005, and therefore it is unclear that any warranties contained within those documents could extend the repose period. However, because the Court finds that the maintenance documents contain no specific warranties of expected useful life, it need not address this issue.

-8-

recommendations are similar to the recommendation that one change the oil in his or her car every three months or 3000 miles.

Plaintiff argues that these inspection recommendations are express representations that specifically warrant that the entire Aircraft has a useful life of at least thirty years.[6] To clarify, Plaintiffs have not provided any inspection recommendations for the PVC-insulated wiring at issue.[7] Rather, they argue–without citing to any support–that because the maintenance recommendations for *some* of the components of the Aircraft begin at 10,000 flight hours or twenty years, Cessna has specifically and expressly warranted that the *entire Aircraft*–including the wiring at issue–will have a useful life of at least twenty years. Plaintiffs then take their argument one step further and assert that because those inspections are to be repeated every 5,000 flight hours or ten years, Cessna specifically warranted that the entire Aircraft will have a useful life of at least thirty years. This argument, however, fails for several of reasons.

First, the unambiguous language of the FSR provides that the manufacturer must *specifically warrant* through *express representation* that the product has a useful life of a certain number of years, which must exceed ten years, and only then will that time frame

---

[6] Interestingly, although Plaintiffs argue that Cessna made express representations as to the expected useful life of the Aircraft, Plaintiffs cannot point to a definite time period that was warranted. Additionally, because Plaintiffs initiated this action thirty years and three days after the statute of repose began to run, it is likely that this suit would be barred even if Cessna had warranted that the Aircraft would have a thirty-year useful life.

[7] Indeed, the SID expressly does not apply to the electrical components of the Aircraft. (SID at 1).

supersede the statutory repose period. None of the inspection recommendations provide any specific warranty as to the useful life of the Aircraft.[8]

Plaintiffs' argument also fails because the maintenance documents provide no end date to the inspections; therefore, taking Plaintiffs' argument to its logical end would result in concluding that Cessna warranted that the Aircraft, and all of its components, had an infinite useful life. In Becker v. Harken, Inc., No. 06-60255-CIV-COHN/SNOW, 2007 WL 1412937, at *3 (S.D. Fla. May 10, 2007), the court rejected a similar inference of an infinite useful life because the manufacturer did "not specifically [or] expressly provide that the [product] will work forever." Similarly, Cessna did not specifically or expressly provide that the Aircraft or the PVC-insulated wiring would work forever.

Plaintiffs attempt to circumvent the reasoning in Becker by claiming that the express representation was that the product would work for at least thirty years. Plaintiffs do this by combining the initial twenty-year inspection and the first ten-year repeat inspection and ignoring the fact that the maintenance documents do not provide an end date to the repeat

---

[8]Plaintiffs cite cases interpreting the definition of "express warranty" under Florida's version of the Uniform Commercial Code (UCC), which provide that "it is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." (Doc. 68 at 17 (quoting State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami, Inc., 557 So. 2d 107, 108 (Fla. 3d DCA 1990))). While this is indeed the settled law under the UCC regarding express warranties, the FSR does not use the phrase "express warranty." Rather, the Florida Legislature chose to use more narrow language, which indicates that a manufacturer must do more to extend the statute of repose than it would have to do to create an express warranty under the UCC. However, even if the "express warranty" standard were applicable, Plaintiffs have provided no support for the contention that the maintenance documents could be construed as an express warranty.

inspections. In other words, Plaintiffs arbitrarily place an end to the supposed warranty after the first ten-year repeat inspection. Such an interpretation is unsupported by the statutory requirement that the useful life be specifically warranted through express representation.

Plaintiffs also argue that Cessna warranted that the useful life of the Aircraft would be at least fifty years because the SID only applies to airplanes with fewer than 40,000 hours of flight time, and it states that beyond 40,000 flight hours "continued airworthiness of the airplane can no longer be assured." (SID at 1). The problem with this argument is that 40,000 hours of flight time does not equate to a number of years. Nonetheless, Plaintiffs attempt to convert hours of flight time into years by equating 10,000 hours of flight time to twenty calendar years. Not only is this mathematical conversion a far cry from an express representation of a specific warranty, but it does not hold up when the maintenance documents are looked at as a whole. Cessna did not use a set formula to convert flight hours into calendar years. For example, the manual recommends that some components be inspected every 10,000 flight hours or twenty years, while other components should be checked every 15,000 flight hours or twenty years; clearly, flight hours do not translate directly into calendar years, and therefore they cannot serve as a basis for an express representation that the useful life of the Aircraft will be fifty years.

Additionally, the statement about "continued airworthiness" refers to the requirement that an operator of an aircraft comply with the manufacturer's maintenance recommendations in order to maintain its airworthiness certificate. Plaintiffs argue that because an aircraft's airworthiness certificate is contingent on compliance with the manufacturer's maintenance recommendations, the maintenance manual expressly warrants

-11-

that if it is followed the Aircraft will continue to be airworthy. Such a conclusion, however, would result in the illogical outcome of the FAA regulations requiring every aircraft manufacturer to expressly warrant that the useful life of the aircraft will be for as long as the aircraft is maintained, and it would completely usurp the FSR.[9]

Accordingly, Cessna has not provided a specific warranty by express representation that the Aircraft or its PVC-insulated wiring would have a useful life beyond ten years. Therefore, the FSR's twelve-year statute of repose applies to this case.

### C. Tolling of the FSR under section 95.031(d), Florida Statutes

The FSR is "tolled for any period during which the manufacturer through its officers, directors, partners, or managing agents had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect." § 95.031(d), Fla. Stat. Furthermore, "[a]ny claim of concealment under this section shall be made with specificity and must be based upon substantial factual and legal support." Id. Plaintiffs allege that the PVC-insulated wiring used in the Aircraft was defective because it would off-gas chlorine when ignited. Plaintiffs further assert that "Cessna knew about the material defects . . . at all material times" and that Cessna failed to warn Plaintiffs or to "perform any tests to determine what concentration level of hydrogen chloride gas would be harmful to the pilots of [the Aircraft]." (Doc. 68 at 19). There is no evidence that Cessna had actual knowledge of the alleged defect, and therefore Plaintiffs are not entitled to a tolling of the statute of repose.

---

[9] This argument also would have the effect of implying a warranty that the Aircraft will have an infinite useful life, which has already been rejected.

-12-

Plaintiffs argument that Cessna had actual knowledge of the alleged product defect is tenuously based on the deposition testimony of Cessna's principal engineer, Michael Richardson. Mr. Richardson stated that due to studies from the carpet industry in the mid-1980s, it was generally known that PVC could off-gas chlorine when ignited. (Richardson Dep., Exs. 1 & 2 Attach. to Doc. 55, at 46). However, Mr. Richardson also testified that the only knowledge he had about the toxicity of PVC came from the carpet industry reports, that he never reviewed any reports regarding the toxins produced by burning PVC-insulated wire, and that he did not think the toxins released by burning PVC-insulated wire would be sufficient to cause anyone danger because "[t]here's a lot of difference between a carpet burning and a wire burning." (Id. at 66-67). Furthermore, there is no evidence that Cessna received any reports or complaints related to the toxicity of burning PVC-insulated wiring prior to this lawsuit.

Despite the FSR's unambiguous actual knowledge requirement, Plaintiffs assert that even if Cessna did not actually know of the alleged product defect, it had a duty under 14 C.F.R. § 21.3[10] to investigate the possibility that it could be defective citing Robinson v. Hartzell Propeller, Inc., 326 F. Supp. 2d 631 (E.D. Pa. 2004). In Hartzell, the court denied the manufacturer's motion for summary judgment based on GARA's statute of repose because there were genuine issues of material fact regarding GARA's "'knowing

---

[10] 14 C.F.R. § 21.3 requires Cessna, as the holder of a Type Certificate, to "report any failure, malfunction, or defect in any product, part, process, or article manufactured by it that it determines has resulted in . . . [t]he accumulation or circulation of toxic or noxious gases in the crew compartment or passenger cabin." Id. § 21.3(a), (c).

misrepresentation or concealment or withholding' exception." Id. at 660. However, Hartzell is both factually and legally distinguishable from this case.

Unlike this case, where the FSR is the controlling statute of repose, in Hartzell GARA applied. GARA's "knowing misrepresentation or concealment or withholding" exception is significantly different from the FSR's tolling provision. GARA's exception provides that the eighteen-year statute of repose does not apply

> if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered.

49 U.S.C. § 40101, Note § (b)(1). In other words, GARA expressly includes failure to comply with FAA regulations as an act that can trigger the exception, and therefore obligations imposed by 14 C.F.R. § 21.3 are relevant in the GARA analysis. See Hartzell, 326 F. Supp. 2d at 657 ("In order for the GARA 'knowing misrepresentation or concealment or withholding' exception to apply . . . plaintiffs must [] show that [the manufacturer] was required to submit the information that was allegedly misrepresented, concealed, or withheld from the FAA."). The FSR, on the other hand, does not reference the FAA regulations. Additionally, the only "knowledge" requirement under the GARA exception is that the manufacturer "knowingly misrepresented . . . , concealed or withheld" information from the FAA. Unlike the FSR's tolling provision, the GARA exception does not require actual knowledge of a defect or require that the manufacturer take affirmative steps to conceal the defect.

In any event, the Plaintiffs in Hartzell produced evidence that the manufacturer had actual knowledge of propeller component failures. For example, Plaintiffs in Hartzell produced evidence that the manufacturer had received previous reports of similar propeller failures and that the manufacturer knew that the "vibratory stresses on the propeller exceeded the allowable limits." Id. at 640-41, 649. In contrast, the only evidence that Plaintiffs in this case have produced is evidence that it was generally known that burning PVC carpet off-gases chlorine; such evidence is clearly different from the evidence presented in Hartzell and is not evidence of actual knowledge of the alleged product defect.

In sum, the FSR's actual knowledge requirement–not the GARA exception discussed in Hartzell–applies here, and Plaintiffs have failed to provide any evidence–much less "substantial factual and legal support"–that Cessna had any actual knowledge of the alleged product defect. Therefore, the tolling provision of the FSR does not apply.

### D. Applicability of Statute of Repose to Contribution and Indemnity Counts

Finally, Plaintiffs argue that the statute of repose does not apply to their claims for contribution and indemnity because contribution and indemnity claims are covered by a separate statute of limitations. Plaintiffs' argument may have had merit if the underlying claims were barred by a statute of limitations, but–despite having a similar effect on the cause of action–statutes of limitations and statutes of repose are "different animals." Ryan v. Heritage Trails Assocs., 745 N.W.2d 724, 728 (Iowa 2008). "They are fundamentally different insofar as a statute of limitations sets forth the time within which an accrued claim must be asserted in court, in contrast to a statute of repose that operates to prevent a cause of action from even accruing." Id. at 728-29 (internal quotations omitted). In other words,

"'[t]he statute of repose is absolute; the bar of the statute of limitations is contingent. The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.'" Bradway v. Am. Nat'l Red Cross, 992 F.2d 298, 301 (11th Cir. 1993) (quoting Wright v. Robinson, 426 S.E.2d 870, 871-72 (Ga. 1993)). Therefore, Plaintiffs' reliance on cases construing contribution and indemnity claims in conjunction with a statute of limitations is misplaced.

Plaintiffs also rely on A Patient Care Center, Inc. v. Ted Hoyer & Co., 498 So. 2d 1381 (Fla. 4th DCA 1986), which contained dicta indicating "that a third-party claim for contribution against the manufacturer of a defective product may not be affected by the statute of repose." Id. at 1382. However, the Patient Care court specifically declined to rule on the merits of the issue, and subsequently the Florida Supreme Court noted that "[a]lthough the statutes governing contribution claims may delineate certain time limits in which claims must be brought, those limits may be superseded or supplanted by time provisions in the statutes governing the underlying basis of the contribution claim." Walker v. Va. Ins. Reciprocal, 842 So. 2d 804, 810 (Fla. 2003) (citing Hayes v. Mercy Hosp. & Med. Ctr., 557 N.E.2d 873, 877 (Ill. 1990)[11]. Further, the plain language of the FSR states that *"[u]nder no circumstances* may a claimant commence an action for products liability, including a wrongful death action or *any other claim arising from* personal injury or property damage caused by a product" after

---

[11] In making this statement, the Florida Supreme Court indicated that a statute of repose could supplant the contribution statute of limitations by citing Hayes, which held that a "medical malpractice statute of repose governs actions for contribution for injuries arising out of patient care because the suit for contribution 'exposes insurance companies to the same liability as if the patient [had] brought a direct action against the insured.'" Walker, 842 So. 2d at 810.

-16-

the repose period has expired. § 95.031(2)(b), Fla. Stat. (emphasis added). The contribution and indemnity claims clearly arise from the personal injury and property damage caused by the Aircraft. See State v. Echeverri, 736 So.2d 791, 792 (Fla. 3d DCA 1999) (rejecting appellant's argument that "the statute [of repose] does not apply to actions for indemnity and contribution, as opposed to an initial claim for damages" because "the contention [is] contrary to the plain language of the statute which clearly applies to *all* actions 'founded on the design, planning, or construction of an improvement to real property'"). Accordingly, Plaintiffs' contribution and indemnity claims are barred by the FSR.

## IV. Conclusion

In sum, the FSR's 12-year repose period controls this case, and none of the FSR's exceptions or tolling provisions applies. Therefore, because this case was commenced approximately thirty years after the statute of repose began to run, Plaintiffs' claims are barred and Cessna is entitled to summary judgment.

Accordingly, it is **ORDERED** and **ADJUDGED** that Cessna's Motion for Summary Judgment Based on the Statute of Repose (Doc. 51) is **GRANTED**. Intervenor Plaintiffs' Motion for Summary Judgment (Doc. 67) and Plaintiffs' Motion for Partial Summary Judgment on Statute of Repose Affirmative Defense (Doc. 79) are **DENIED**. All other pending motions in this case (Docs. 81, 115, 116, 122, 125, 126, & 136) are **DENIED as moot**. The Clerk is directed to enter judgment in favor of Defendant Cessna Aircraft Company and close this case thereafter.

**DONE** and **ORDERED** in Orlando, Florida this 8th day of April, 2011.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record